**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Nicole Bennett-Cameron,<br><br>Plaintiff,<br>vs.<br><br>General Motors LLC,<br><br>Defendant. | Civil Case No.: |

For this Complaint, the Plaintiff Nicole Bennett-Cameron, by undersigned counsel, states as follows:

## PRELIMINARY STATEMENT

1. This is an action by the lessee of a new 2025 Chevrolet Tahoe High Country vehicle (hereafter the "subject vehicle") manufactured and sold by the Defendant General Motors LLC. The subject vehicle is equipped with Defendant's 6.2L V-8 "L87" engine, the same engine that Defendant recalled in approximately 597,630 model year 2021 through 2024 vehicles because it contains manufacturing defects that cause the engines to sustain internal damage, fail, and lose propulsion without warning. The subject vehicle's engine failed in precisely that manner, at 13,513 miles and approximately five months after delivery. Plaintiff seeks damages related to her vehicle's defective engine and Defendant's failure to honor the terms of its warranty.

2. The Plaintiff would not have leased the subject vehicle had she been made aware of the subject vehicle's defects.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) in that there is complete diversity of citizenship between the parties and the amount in

controversy exceeds $75,000.00, exclusive of interest and costs. Plaintiff is a citizen of the Commonwealth of Pennsylvania. Defendant General Motors LLC is a citizen of the State of Delaware and the State of Michigan. The amount in controversy exceeds $75,000.00 because Plaintiff seeks, among other relief, revocation of acceptance of and a refund of all amounts paid for a vehicle whose agreed upon value was $89,756.90, exclusive of fees, taxes, and rent charges, together with incidental, consequential, and punitive damages and attorney's fees.

4. This Court also has jurisdiction over this matter pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1)(B), in that Plaintiff claims more than $50,000.00 in damages, exclusive of interest and costs.

5. The Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367.

6. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1) as Defendant is subject to personal jurisdiction in this District and where Defendant, as principal, directs and controls warranty repairs on covered vehicles through its agents consisting of a dealership network located in this District.

7. Further, venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events giving rise to the Plaintiff's claims occurred within this District.

## PARTIES

8. Plaintiff Nicole Bennett-Cameron was, at all relevant times, an adult individual who is domiciled in Gilbertsville, Montgomery County, Pennsylvania, and who intends to remain there, and who leased the subject vehicle in Paoli, Chester County, Pennsylvania, which was manufactured or sold by Defendant. Plaintiff is a citizen of Pennsylvania.

9. Defendant General Motors LLC ("GM") is organized under the laws of

Delaware with its principal place of business located at 1240 Woodward Avenue, Detroit, Michigan 48226. At all relevant times, GM was engaged in the business of importing, assembling, marketing, distributing, and warranting GM automobiles in the Commonwealth of Pennsylvania and throughout the United States. Defendant GM is a Delaware limited liability company. GM's sole member is General Motors Holdings LLC, a Delaware limited liability company with its principal place of business in Michigan. General Motors Holdings LLC's sole member is General Motors Company, a Delaware corporation with its principal place of business in Michigan. GM is a citizen of Delaware and Michigan for diversity purposes.

## FACTUAL ALLEGATIONS

10. On December 20, 2024, Plaintiff leased a new 2025 Chevrolet Tahoe High Country equipped with the L87 6.2L V-8 engine, Vehicle Identification Number 1GNS6TRL9SR128278 (hereafter the "Vehicle") from Del Chevrolet, Inc., an authorized GM dealership located at 1644 Lancaster Avenue, Paoli, Pennsylvania (hereinafter "Del Chevrolet"), for personal, family, or household use.

11. The agreed upon value of the Vehicle was $89,756.90, excluding fees, taxes, and rent charges.

12. The total of payments Plaintiff is obligated to pay under the lease is $60,538.75.

13. Prior to leasing the Vehicle, Plaintiff relied upon Defendant's representations regarding Defendant's New Vehicle Limited Warranty that accompanied the lease of the Vehicle, including the representation that Defendant would repair the Vehicle; these representations were material to Plaintiff's decision to lease the Vehicle.

14. Specifically, under its New Vehicle Limited Warranty, Defendant promised to repair or replace components found to be defective in material or workmanship during the 3-year / 36,000-mile period following such vehicle delivery to the consumer. Additionally,

Defendant promised to repair or replace the powertrain components, including the Vehicle's engine, found to be defective in material or workmanship during the 5-year / 60,000-mile period following such vehicle delivery to the consumer.

15. Defendant's New Vehicle Limited Warranty and Limited Powertrain Warranty accompanied the Vehicle, ran to Plaintiff as the lessee and operator of the Vehicle, and were honored by Defendant's authorized dealership on Plaintiff's behalf as described below.

16. On December 20, 2024, and following the execution of the Vehicle lease documents, Plaintiff took delivery of the Vehicle.

17. Plaintiff thereafter registered the Vehicle in the Commonwealth of Pennsylvania, in Montgomery County, where she resides.

18. Defendant designates the Vehicle's 6.2L V-8 engine by its Regular Production Option code L87 (hereafter the "L87 engine").

19. On April 24, 2025, Defendant submitted a Part 573 Safety Recall Report to the National Highway Traffic Safety Administration, assigned NHTSA Recall No. 25V-274 and Defendant's own recall number N252494000, covering approximately 597,630 model year 2021 through 2024 vehicles equipped with the L87 engine.

20. In that report, Defendant disclosed that the engines in the recalled vehicles "may have manufacturing defects that can lead to engine damage and engine failure," and identified two root causes: rod bearing damage caused by sediment present on the connecting rods and in the crankshaft oil galleries, and out-of-specification crankshaft dimensions and surface finish.

21. Defendant further disclosed that the suspect engine build period ran from March 1, 2021, through May 31, 2024, and that between April 29, 2021, and February 3, 2025, Defendant had received 28,102 field complaints concerning the L87 engine, of which 14,332

involved a loss of propulsion.

22. Defendant thus began receiving field complaints of L87 engine failures on or about April 29, 2021 – more than three and one-half years before it leased the Vehicle to Plaintiff – and Defendant opened and closed an internal investigation into those failures in February 2022, approximately two years and ten months before the lease.

23. Upon information and belief, Defendant also knew of the L87 engine defect before it manufactured and leased the Vehicle through pre-production and pre-sale design validation, durability, and quality testing of the L87 engine; through supplier and manufacturing quality data concerning the connecting rods and crankshafts used in the L87 engine; and through internal engineering analyses of the field failures described above.

24. Defendant therefore knew, before it leased the Vehicle to Plaintiff on December 20, 2024, that the L87 engine was prone to bearing damage, catastrophic internal engine damage, and sudden loss of propulsion.

25. Notwithstanding that knowledge, Defendant did not disclose the L87 engine defect to Plaintiff at or before the time Plaintiff leased the Vehicle.

26. Upon information and belief, Defendant continued to manufacture and to install L87 engines in model year 2025 vehicles, including the Vehicle, to the same design and specifications, and using the same connecting rod and crankshaft components and the same component suppliers, as the L87 engines that Defendant recalled, and those engines carry the same defect.

27. Defendant did not include model year 2025 vehicles such as the Vehicle within the population of vehicles covered by Recall No. 25V-274 and Defendant's recall number N252494000.

28. In connection with the recall, Defendant also issued Special Coverage Adjustment N252494003, by which Defendant undertook to repair or replace the L87 engine, without charge to the owner, for a period of ten (10) years or 150,000 miles from the vehicle's original in-service date, whichever occurred first. Defendant did not extend that special coverage to model year 2025 vehicles such as the Vehicle.

29. Defendant made its Part 573 disclosure on April 24, 2025 – approximately four months after it leased the Vehicle to Plaintiff, and approximately five weeks before the Vehicle's engine failed. Defendant neither disclosed the L87 engine defect to Plaintiff nor repaired or replaced the Vehicle's engine in the interval between its own disclosure and the failure of the Vehicle's engine.

30. Since the time of Vehicle delivery to the present, the Vehicle has been out of service at least twenty-one (21) days because of the catastrophic engine failure.

31. On or about May 30, 2025, while Plaintiff was operating the Vehicle, the Vehicle's check engine light and service transmission message illuminated and the Vehicle then shut off, and the Vehicle had to be towed.

32. That same day, the Vehicle was towed to Richard Chevrolet, an authorized GM dealership located at 1405 Highland Avenue, Route 10, Cheshire, Connecticut (hereinafter "Richard Chevrolet"), and Plaintiff complained that the check engine and service transmission lights had come on and that the Vehicle had then shut off.

33. At the time the Vehicle's odometer read 13,513 miles.

34. Richard Chevrolet verified that the Vehicle would not crank and would not start, and upon further inspection found that the Vehicle's connecting rod and main bearings were damaged.

35. Richard Chevrolet attempted a repair by replacing the Vehicle's engine and installed new fuel feed pipes and new motor mounts, a new radiator, and replaced the necessary seals, gaskets, pipes, bolts, belts, oil filter, oil, and coolant.

36. Upon information and belief, the failure of the Vehicle's engine was caused by the same L87 engine defect that Defendant reported to the National Highway Traffic Safety Administration – rod bearing damage caused by sediment present on the connecting rods and in the crankshaft oil galleries, and out-of-specification crankshaft dimensions and surface finish. The spun connecting rod and main bearings that Richard Chevrolet found in the Vehicle's engine are the signature of precisely that bearing failure.

37. The Vehicle's engine failed at 13,513 miles and approximately five months after delivery, well within the three-year / 36,000-mile term of Defendant's New Vehicle Limited Warranty and well within the five-year / 60,000-mile term of Defendant's Limited Powertrain Warranty.

38. Defendant paid for the replacement of the Vehicle's engine as warranty work, at no charge to Plaintiff. Defendant thereby acknowledged that the failure of the Vehicle's engine was covered by Defendant's written warranty.

39. Upon information and belief, the replacement engine that Defendant supplied and that Richard Chevrolet installed in the Vehicle is an L87 engine manufactured, or remanufactured, to the same specifications as the L87 engines that Defendant recalled, and carries the same defect.

40. During this visit, the Vehicle was out of service at least twenty-one (21) days, and was ready for pick up on or about June 20, 2025.

41. A vehicle whose engine can sustain catastrophic internal damage, seize, and lose

propulsion without warning while being driven at highway speed presents an unreasonable risk to the safety of Plaintiff, her passengers, and the motoring public.

42. As a result of the L87 engine defect, the catastrophic engine failure, and the replacement of the Vehicle's engine, the Vehicle is worth substantially less than a comparable vehicle without such history, and Plaintiff has suffered a diminution in the value of the Vehicle.

43. Had Plaintiff known of the L87 engine defect at the time of the lease, she would not have leased the Vehicle, or would have paid substantially less for it.

44. By U.S. First Class Mail dated October 8, 2025, Plaintiff notified Defendant of the above-mentioned nonconformities with the Vehicle and Defendant's failure to conform the Vehicle to the terms of Defendant's express warranty within a reasonable period of time. Within the same letter, Plaintiff revoked her acceptance of the Vehicle.

45. The defects experienced by Plaintiff substantially impair the use, value, and safety of the Vehicle.

46. Plaintiff provided the Defendant, or one or more of its authorized or franchised dealers, with reasonable opportunity to repair the problems with the Vehicle.

47. The Defendant has neglected, failed, or otherwise been unable to repair the substantial impairments to the Vehicle within a reasonable amount of time.

## FIRST CAUSE OF ACTION
**Breach of Warranty Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.***

48. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

49. The Plaintiff is a "consumer" as defined in 15 U.S.C. § 2301(3).

50. Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

51. The subject vehicle is a "consumer product" as defined in 15 U.S.C. § 2301(1).

52. 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

53. 15 U.S.C. § 2304(a)(1) requires Defendant, as warrantor, to remedy any defect, malfunction or nonconformance of the subject vehicle within a reasonable time and without charge to the Plaintiff.

54. Defendant has failed to remedy the subject vehicle's engine defect within a reasonable time, thereby breaching the written and implied warranties applicable to the subject vehicle.

55. As a result of Defendant's breaches of written and implied warranties, and Defendant's failure to remedy the same within a reasonable time, Plaintiff has suffered damages.

**SECOND CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* and 13 Pa.C.S. § 2A212, *et seq.***

56. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

57. Defendant is a merchant with respect to motor vehicles.

58. The Vehicle was subject to the implied warranty of merchantability, as defined in 13 Pa.C.S. § 2A212, *et seq.*, running from the Defendant to the Plaintiff.

59. An implied warranty that the subject vehicle was merchantable arose by operation of law as part of the lease of the subject vehicle.

60. Defendant breached the implied warranty of merchantability in that the subject vehicle was not in merchantable condition when Plaintiff leased it, or at any time thereafter, and the subject vehicle is unfit for the ordinary purposes for which such vehicles are used.

61. Because Defendant made a written warranty to Plaintiff in connection with the lease of the subject vehicle, 15 U.S.C. § 2308(a) prohibits Defendant and any supplier from disclaiming or modifying the implied warranty of merchantability applicable to the subject vehicle, and any purported disclaimer or modification of that implied warranty is ineffective for purposes of the Magnuson-Moss Warranty Act and is void as a matter of state law pursuant to 15 U.S.C. § 2308(c).

62. Plaintiff notified Defendant of the defect in the subject vehicle within a reasonable time after Plaintiff discovered it.

63. As a result of Defendant's breach of the implied warranty of merchantability, Plaintiff has suffered damages, including but not limited to incidental and consequential damages.

## THIRD CAUSE OF ACTION
**Breach of Express Warranty, 13 Pa.C.S. § 2A210**

64. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

65. In connection with the lease of the subject vehicle to the Plaintiff, Defendant provided Plaintiff with a New Vehicle Limited Warranty and Limited Powertrain Warranty, under which it agreed to repair or replace original components found to be defective in material or workmanship under normal use and maintenance, including the engine and its components.

66. Plaintiff relied on Defendant's warranty when she agreed to lease the subject vehicle and Defendant's warranty was part of the basis of the bargain.

67. Plaintiff submitted her Vehicle for warranty repairs as referenced herein. Defendant failed to comply with the terms of the express written warranty provided to Plaintiff, by failing to repair the dangerous engine defect under the Vehicle's warranty as described herein

within a reasonable period of time.

68. Plaintiff has given Defendant reasonable time to cure said defects, but Defendant has been unable and/or has refused to do so within a reasonable time.

69. As a result of said nonconformities, Plaintiff cannot reasonably rely on the subject vehicle for the ordinary purpose of safe, comfortable, and efficient transportation.

70. The Plaintiff could not reasonably have discovered said nonconformities with the subject vehicle prior to Plaintiff's acceptance of the subject vehicle.

71. The Plaintiff would not have leased the subject vehicle, or would have paid less for the subject vehicle, had she known, prior to the time of the lease, that the subject vehicle contained a defective engine.

72. As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranty, Plaintiff has suffered actual and consequential damages. Such damages include, but are not limited to, the loss of the use and enjoyment of her vehicle, and a diminution in the value of the subject vehicle containing the defects identified herein.

## FOURTH CAUSE OF ACTION
**Revocation of Acceptance, 13 Pa.C.S. § 2A517**

73. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

74. Plaintiff reasonably assumed, and Defendant represented, that all of the aforesaid defects would be cured within a reasonable time.

75. After a lengthy opportunity provided to Defendant to cure, it has become apparent that said defects cannot be seasonably cured.

76. The defects substantially impair the value of the Vehicle to the Plaintiff.

77. By a letter dated October 8, 2025, the Plaintiff notified Defendant of said defects and of Plaintiff's intent to revoke acceptance and demanded return of all amounts paid by Plaintiff for said Vehicle.

78. Defendant has nevertheless failed to make a good-faith response to this demand within thirty (30) days of its receipt.

79. As a result of Defendant's conduct the Plaintiff has been damaged.

## FIFTH CAUSE OF ACTION
**Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.***

80. The Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

81. Plaintiff is a person who leased goods primarily for personal, family, or household purposes within the meaning of 73 P.S. § 201-9.2(a).

82. Defendant is a "person" as defined by 73 P.S. § 201-2(2) because it is a limited liability company.

83. At all relevant times, Defendant has engaged in "trade" and "commerce" as defined by 73 P.S. § 201-2(3) by advertising, offering for sale, selling, leasing, and/or distributing vehicles in the United States, including Pennsylvania, directly or indirectly affecting the people of the Commonwealth of Pennsylvania.

84. The lease of the Vehicle to the Plaintiff under the guise that it was free from defects that would substantially impair the use, safety, or value of the Vehicle represents an unfair method of competition or an unfair or deceptive act or practice within the meaning of 73 P.S. § 201-2(4), declared unlawful by 73 P.S. § 201-3.

85. The Defendant violated 73 P.S. § 201-1, *et seq.*, in one or more of the following ways:

a. Representing the subject vehicle to be of good, merchantable quality, free of defects, when in fact it was not;

b. Representing that the repairs could be performed properly, within a reasonable time, when Defendant knew or, in the exercise of reasonable care, should have known that this was not the case; and

c. Failing to reveal material facts including but not limited to the nature of the nonconformities and defects complained of herein.

86. In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the subject vehicles, including the Plaintiff's vehicle, equipped with the 6.2L V-8 L87 engine are defective. The existence of the defect, which manifests in all or substantially all of the vehicles equipped with the 6.2L V-8 L87 engine, is material to a reasonable consumer in that it poses an unreasonable risk to their safety, may lead to thousands of dollars in repair expenses, requires expensive and inconvenient maintenance efforts, and causes the subject vehicles to be worth substantially less than they would otherwise be valued. Defendant's failure to disclose these defects and their ramifications offends public policy and is unethical, unscrupulous, and substantially injurious to consumers.

87. Accordingly, Defendant violated 73 P.S. § 201-2(4)(v), (vii), (ix), and (xxi), as it represented that subject vehicles had characteristics, uses, or benefits that they do not have, represented that subject vehicles were of a particular standard, quality, or grade when they were of another, advertised subject vehicles with the intent not to sell or lease them as advertised, and engaged in other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

88. As a result of Defendant's unlawful conduct, Plaintiff has suffered an

ascertainable loss of money and property within the meaning of 73 P.S. § 201-9.2(a), in that she is left with a vehicle of diminished value and utility because of its defects, which continues to pose a serious safety risk.

89. Plaintiff is a reasonable consumer who does not expect that her vehicle will suffer from the above-described defects, which is the reasonable and objective consumer expectation for vehicles.

90. As a result of Defendant's misconduct, Plaintiff has been harmed and has suffered actual and economic damages in that her vehicle is defective and requires repairs or replacement and is worth less money.

91. The Defendant is in the business of leasing and selling private automobiles and therefore the violations are likely to affect the general public, now and in the future.

92. The Defendant violated the law willfully and knowingly.

## DEMAND FOR RELIEF

WHEREFORE, the Plaintiff demands judgment against Defendant as follows:

a. An order approving revocation of acceptance or rescission of the lease of the Vehicle;

b. Money damages, in the form of a refund of the full contract price, including trade-in allowance, taxes, fees, insurance premiums, interest, and costs, and a refund of all payments made by Plaintiff on the subject contract;

c. Equitable relief including, but not limited to, repair of the defective Vehicle with an extension of the express and implied warranties, and service contracts which are or were applicable to the Vehicle, in the event that Plaintiff is not found to be entitled to revocation;

d. Incidental and consequential damages;

e. Treble and punitive damages;

f. Reasonable attorney's fees;

g. Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: September 29, 2026

By: */s/ Jody Burton*

Jody Burton, Esq.
LEMBERG LAW, L.L.C.
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-3424
*Attorneys for Plaintiff*